OPINION OF THE COURT
 

 Alexander, J.
 

 The primary issue presented on this appeal is whether the Rent Stabilization Law authorizes the Division of Housing and Community Renewal to award a permanent rent increase to an owner who completes a major capital improvement of a
 
 *211
 
 rent stabilized building. We conclude that it does. Thus we reject appellants’ contention that the agency erred in construing the statutory requirement that the costs of such improvements be "amortized” as describing the method by which the corresponding rent increase is to be calculated rather than mandating that any such increase be terminated when the owner recoups the cost of a major capital improvement
 
 (see,
 
 Administrative Code of City of New York § 26-511 [c] [6] [b]). We also reject appellants’ contention that the agency has acted irrationally or arbitrarily and capriciously in concluding that the installation of storm windows in this case constituted a major capital improvement for which a permanent rent increase could be granted.
 

 I
 

 Respondent Ansonia Associates (Ansonia) owns a rent-stabilized building located at 2109 Broadway in New York City. In July 1981, Ansonia applied to the Conciliation and Appeals Board (the predecessor agency to respondent Division of Housing and Community Renewal [DHCR]) for a rent increase following the completion of a major capital improvement. Specifically, Ansonia’s application requested a 3.12% rent increase, based on its costs of $339,471 in installing storm windows in the subject building. The Ansonia Residents’ Association and the Ansonia Tenants’ Association, both representing the tenants of the building, opposed the application. On August 9, 1984, the District Rent Administrator determined that the installation of storm windows constituted a major capital improvement. In calculating the corresponding rent increase, the administrator disallowed some of Ansonia’s expenses and awarded Ansonia a rent increase of 2.15%. Both tenants’ organizations and Ansonia filed petitions for administrative review and on May 23, 1985, the Commissioner denied the petitions and affirmed the determination of the District Rent Administrator.
 

 All three parties then instituted article 78 proceedings which were consolidated by Supreme Court. That court granted DHCR’s cross motion to remit the proceedings to the agency for further consideration. In remitting, the court directed DHCR to consider,
 
 inter alia,
 
 whether the installation of storm windows qualified as a major capital improvement or was actually deferred maintenance, whether the installation was "building-wide”, whether and to what extent the rents of
 
 *212
 
 the building’s commercial tenants should have been included in the calculation of the rent increase, whether an increase should have been withheld until claimed inadequacies in the installation and alleged continuing leaks were remedied, whether any rent increase based upon the major capital improvement could be permanent, and whether the grant of a 2.15% increase for this improvement when added to the other increases recently received by the owner totaled more than the 6% annual increase allowed by statute.
 

 The Commissioner reviewed the entire record and upon reconsideration, denied the owners’ petition, granted the tenants’ petitions to the extent of denying the requested rent increase with respect to eight apartments where, according to the record, Ansonia had found it impossible to install new windows due to the physical characteristics of the windows involved, and otherwise affirmed the determination of the District Rent Administrator. The Commissioner found that the storm window installation was building-wide, constituted a major capital improvement and that a permanent rent increase could be awarded for such an improvement.
 

 The tenants’ organizations
 
 [1]
 
 and Ansonia again instituted article 78 proceedings challenging DHCR’s determination. Ansonia contended that certain fees and expenses were improperly excluded from the rent increase calculation while the tenants alleged that DHCR erred in determining that the installation of storm windows constituted a major capital improvement and in granting a permanent rent increase for such an improvement. Supreme Court dismissed the proceedings. On the parties’ cross appeals, the Appellate Division affirmed, without opinion, and subsequently denied reargument and leave to appeal to this court. We granted leave to the tenants’ organizations
 
 [2]
 
 and now affirm the order of the Appellate Division.
 

 II
 

 On this appeal, the tenants argue that DHCR erred and was arbitrary and capricious in determining that the installation of storm windows in living areas but not in hallways or other common areas was a "building-wide” major capital improve
 
 *213
 
 ment and that the failure to install new prime windows did not preclude a major capital improvement rent increase. The tenants further argue that DHCR erroneously construed section 26-511 (c) (6) (b) of the Rent Stabilization Law to authorize the agency to award a permanent rent increase on the basis of a major capital improvement.
 

 We note at the outset that our review of DHCR’s interpretation of the statutes it administers is limited. "Where the interpretation of a statute or its application involves knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom, the courts regularly defer to the governmental agency charged with the responsibility for administration of the statute. If its interpretation is not irrational or unreasonable, it will be upheld.”
 
 (Kurcsics v Merchants Mut. Ins Co,
 
 49 NY2d 451, 459;
 
 see also, Matter of Salvati v Eimicke,
 
 72 NY2d 784, 791;
 
 Matter of Colt Indus, v New York City Dept. of Fin.,
 
 66 NY2d 466.)
 

 DHCR’s determination that an alteration constitutes a major capital improvement within the meaning of section 26-511 (c) (6) (b) necessarily entails the agency’s expertise in evaluating factual data and is entitled to deference if not irrational or unreasonable. Mindful of our limited standard of review, we reject the tenants’ threshold argument that DHCR erred in concluding that the installation of storm windows at the subject building is a major capital improvement. The agency has rationally interpreted the requirement of section 26-511 (c) (6) (b) that such improvements be "building-wide” to be satisfied by the installation of storm windows in virtually all the building’s living areas notwithstanding that none were installed in hallways or other common areas
 
 (see also,
 
 New York City Rent Stabilization Code [9 NYCRR] § 2522.4 [a] [2] [i])-
 
 [3]
 

 Nor has DHCR acted arbitrarily or capriciously in determining that this installation of storm windows qualified as a major capital improvement contrary to the agency’s Operational Bulletin 84-4, which provides that the installation of storm windows is not a major capital improvement if
 
 *214
 
 unaccompanied by the installation of prime windows. Operational Bulletin 84-4 became effective after the determination of the District Rent Administrator in this case and DHCR has allowed Ansonia the benefit of the agency’s published exception to that bulletin for parties who had expended sums installing storm windows before its effective date
 
 (see,
 
 DHCR Update No. 85-3). In so treating Ansonia’s rent increase application, DHCR has acted consistently with its treatment of the rent-increase applications of other owners who installed storm windows before* the effective date of Operational Bulletin 84-4
 
 (cf., Matter of Field Delivery Serv. [Roberts],
 
 66 NY2d 516). Accordingly, there is no basis upon which to disturb the agency’s determination that Ansonia’s installation of new storm windows constituted a major capital improvement.
 

 The dispositive issue on this appeal, then, is whether DHCR properly construed section 26-511 (c) to allow the agency to grant a permanent rent increase on the basis of this major capital improvement. Unlike the question of whether the installation of storm windows qualified as a major capital improvement, this determination is one of pure statutory construction, turning upon the local legislature’s intended meaning of the word "amortized” in section 26-511 (c) and does not entail administrative expertise or the evaluation of factual data. Since this "question is one of pure statutory reading and analysis, dependent only upon accurate apprehension of legislative intent”, we need not and do not defer to the agency in construing the statute
 
 (see, Kurcsics v Merchants Mut. Ins. Co.,
 
 49 NY2d, at 459,
 
 supra).
 
 Nevertheless, our review of the statute and its legislative history leads us to conclude that DHCR has correctly construed the statute to authorize an award of a permanent rent increase based upon the completion of a major capital improvement.
 

 Section 26-511 (c) of the Rent Stabilization Law authorizes DHCR to adopt a code in accordance with that statute, providing that
 

 "A code shall not be adopted hereunder unless it appears to the [DHCR] that such code
 

 * * *
 

 "(6) provides criteria whereby the commissioner may act upon applications by owners for increases in excess of the level of fair rent increase established under this law provided, however, that such criteria shall provide * * * (b) as to
 
 *215
 
 completed building-wide major capital improvements, for a finding that such improvements are deemed depreciable under the Internal Revenue Code and
 
 that the cost is to be amortized over a five-year period, based upon cash purchase price exclusive of interest or service charges.
 
 Notwithstanding anything to the contrary contained herein, no increase granted pursuant to this paragraph shall, when added to the annual gross rents, as determined by the commissioner, exceed the sum of * * * (iii) actual annual mortgage debt service (interest and amortization) * * * The collection of any increase in the stabilized rent for any apartment pursuant to this paragraph shall not exceed six percent in any year * * * with collectability of any dollar excess above said sum to be spread forward in similar increments and added to the stabilized rent as established or set in future years” (emphasis added).
 

 In accordance with this provision, the Rent Stabilization Code provides that any increase based upon a major capital improvement "shall be l/60th of the total cost, including installation but excluding finance charges” (Rent Stabilization Code [9 NYCRR] § 2522.4 [a] [4]).
 

 The tenants argue that the word "amortized” is used in the statute in its dictionary sense, meaning the payment of a debt in installments until the debt is extinguished. Thus they contend that the plain language of the statute requires that the cost of a major capital improvement be amortized over a five-year period in the form of a temporary rent increase which terminates at the end of the five years when the owner has recouped the cost of the improvement.
 

 DHCR and its predecessor agencies, however, have consistently construed section 26-511 (c) to authorize permanent rent increases for the completion of major capital improvements and the local legislature, in never choosing to amend the statute to provide otherwise, has acquiesced in this construction. In the agency’s view, the requirement of section 26-511 (c) that the costs of major capital improvements be "amortized” refers only to the method of calculating the amount of the corresponding rent increase — an amount which section 26-511 (c) also provides may not exceed 6% annually and which is to be added to the permanent "stabilized rent”. Once the amount of the increase is calculated, the statute does not limit the time during which the increase can be imposed. Contrary to the tenants’ contention, this construction is not inconsistent with the section’s subsequent specific reference to "interest
 
 *216
 
 and amortization” relating to an owner’s mortgage. Unlike payments on a mortgage, a rent increase on the basis of a major capital improvement does not represent payment of a finite debt which the tenant owes to the owner, but rather is payment for a service which the tenant continues to receive after the owner has recouped the initial cost of the improvement.
 

 This view is supported by the legislative history and purposes of the Rent Stabilization Law which was enacted in 1969 in response to a housing crisis which had developed in part because the Rent Control Law (Administrative Code § 26-401
 
 et seq.
 
 [formerly § Y51-1.0
 
 et seq.])
 
 did not apply to some 400,000 apartments constructed after 1947. As we have recognized, the dual purposes of the Rent Stabilization Law were to protect tenants from eviction as a result of rapidly spiraling rent increases and to encourage future housing construction by allowing landlords reasonable rent increases so that they could profit from the operation of their properties
 
 (8200 Realty Corp. v Lindsay,
 
 27 NY2d 124, 136-137). Thus an interpretation of section 26-511 (c) to allow permanent rather than only temporary rent increases for major capital improvements serves the purposes of the Rent Stabilization Law by providing owners with an incentive to make improvements which benefit owners and tenants alike. Under the contrary construction of the statute urged by the tenants, owners would have little incentive to invest in major capital improvements if they could only recover the cost of their investment, and in fact might incur additional expenses in maintaining such an improvement after its initial cost had been recovered.
 

 Moreover, the agencies charged with administering the Rent Control Law have always construed that statute to permit permanent rent increases on the basis of completed major capital improvements
 
 (cf., Matter of Litman v Weaver,
 
 20 Misc 2d 1032,
 
 affd
 
 10 AD2d 865 [permanent rent increase allowed for "amortized” hardship expense]). The legislative history indicates that in adopting the less onerous regulatory scheme of the Rent Stabilization Law, the City Council was aware of and chose to continue this practice for rent-stabilized apartments (Report to Mayor on Investigation into Rental Increases in the Non-Controlled Housing Market, Legis Bill Jacket, Local Laws, 1969, No. 16 of City of New York [explicitly noting that increases for major capital improvements under rent control are permanent and that "amortization” refers to the technical method of calculating rent increases]). There is
 
 *217
 
 no indication that the City Council intended the generally less onerous regulatory scheme of the Rent Stabilization Law to be more burdensome than the Rent Control Law in this respect. Thus we conclude that section 26-511 (c) of the Rent Stabilization Law authorizes DHCR to grant permanent rent increases on the basis of completed major capital improvements.
 

 We have considered appellants’ remaining contention and conclude that it is without merit.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Judges Simons, Kaye, Titone, Hancock, Jr., and Bellacosa concur; Chief Judge Wachtler taking no part.
 

 Order affirmed, with costs.
 

 [1]
 

 . A third tenants’ organization, the Ansonia Tenants’ Coalition, and its president were permitted to intervene.
 

 [2]
 

 . Ansonia’s cross motion for leave to appeal was denied
 
 (Matter of Ansonia Assocs. v State Div. of Hous. & Community Renewal,
 
 74 NY2d 604).
 

 [3]
 

 . Moreover, to the extent that the tenants suggest that there is not substantial evidence in the record to support DHCR’s findings as to the number of windows installed and that the installation did not constitute deferred maintenance, the argument is without merit. In light of these findings, the tenants’ additional argument that DHCR erred in granting a rent increase for deferred maintenance is also without merit.