■ BRYANT AVENUE TENANTS' ASSOCIATION et al., Respondents, v EDWARD I. KOCH, as Mayor of the City of New York, et al., Appellants. (And Five Related Actions.) [602 NYS2d 345] —Orders of the Supreme Court, New York County (Elliott Wilk, J.), entered July 9, 1991, which, *inter alia,* granted a preliminary injunction enjoining defendant 69 Tiemann's Owner's Corp. from collecting rent increases attributable to Major Capital Improvements (MCIs) in excess of 6% per year and denied motions by defendants Hyde Park Associates and Regents Park Associates to vacate or modify preliminary injunctions previously entered which enjoined them from attempting to collect rent increases attributable to MCIs in excess of 6% per year and from merging MCI rent increases into the permanent rent base, are reversed, on the law and facts to the extent appealed from, the motion by plaintiffs denied and the motions by defendants granted, without costs or disbursements.

We recognize, as does the dissent, that the award of MCI rent increases which are merged into the stabilized base rent has been upheld by this Court and the Court of Appeals. Thus, we have previously noted, "The question of whether an MCI increase becomes a permanent part of the stabilized base rent has just been determined in the landlord's favor in *Matter of Ansonia Residents Assn. v New York State Div. of Hous. & Community Renewal* (75 NY2d 206)." *(Matter of Ansonia Assocs. v State Div. of Hous. & Community Renewal,* 157 AD2d 583, 584.)

However, unlike the dissent, we do not find any violation of the Rent Stabilization Law in the award of temporary retroactive rent increases of 6% annually in addition to the prospective MCI increases. As recognized by the dissent, applications by landlords for rent increases based on Major Capital Improvements can take the agency as long as 3 years to process and approve. It would not only be unfair but would also act against the purposes of the Rent Stabilization Law to disallow earned increases during these periods. Such a policy, in the face of the long delays inherent in this government bureaucracy, would encourage a disinclination by landlords to expend any large sums of money in improving properties.

Further, the law prohibits increases in excess of 6% per year. However, MCI increases are effective as of the first rent payment occurring 30 days after the filing of the application by the landlord. Thus, the agency, in awarding temporary retrocative rent increases, is simply allocating, albeit some time in the future, a 6% increase *for that period of time* immediately after the application, and the tenant, therefore, does not pay in excess of 6% *per year.*

The Legislature is certainly aware of this practice of the agency in awarding temporary retroactive rent increases, and has *not* made any changes in the law expressly forbidding such practice. This action of the legislative authority, in not "choosing to amend the statute to provide otherwise, has acquiesced in this construction" *(Matter of Ansonia Residents Assn. v New York State Div. of Hous. & Community Renewal,* 75 NY2d 206, 215, *supra).* Concur—Murphy, P. J., Sullivan and Asch, JJ.

Wallach and Rubin, JJ., dissent in a memorandum by Wallach, J., as follows: Under the New York City Rent Stabilization Law (RSL; Administrative Code of City of NY, tit 26, ch 4), rent adjustments are established on an area-wide basis by a Rent Guidelines Board ("RGB"), based upon economic conditions, cost of living indices and other factors in the neighborhood in question (Administrative Code § 26-510). The law further provides for rent increases on a building-wide basis, to compensate a landlord for major capital improvement ("MCI") expenditures, where appropriate application is filed with the Division of Housing and Community Renewal ("DHCR"), in accordance with that agency's regulatory procedures (§ 26-511; *see,* Rent Stabilization Code [9 NYCRR] § 2522.4 [a]).

The RSL permits the DHCR Commissioner to consider landlord applications for "increases in excess of the level of fair rent increase established under this law" (§ 26-511 [c] [6]). Collection of any such increase from tenants is to be spread forward in annual increments, but not to exceed 6% of the legal regulated rent in any one year. The regulation (9 NYCRR 2522.4 [a] [8]) speaks in terms of adding this annual increment to the legal regulated rent as a "permanent, prospective rent increase". An additional increment of up to 6% may be exacted for any "temporary retroactive portion of such rent increase." *(Ibid.)* The temporary retroactive increase is designed for the landlord's recoupment of arrears during the period of delay from filing of his MCI application until the issuance of an order by the Commissioner.

Among the defendants herein are landlords who sought to collect MCI rent increases amounting to a maximum 6% permanent increase in the legally regulated rent level each year until their costs of the improvements were fully amortized, plus a temporary increase of no more than 6% per year to amortize arrears during the period of agency delay in processing the applications. Plaintiffs, who are affected tenants and tenants' associations, have challenged the regulatory procedure whereby computation of MCI rent increases results in an annual rent increase exceeding the RGB's annually established guidelines for rent adjustments. They further argue that the agency policy of allowing MCI increases to be merged into the permanent rent base means that a maximum 6% increase for the spillover the following year would result in a compounding effect that would actually raise the following year's rent increase to more than a simple 6%. Finally, plaintiffs object to the regulations which allow separate 6% increases for permanent prospective and temporary retroactive recoupments in the same year, arguing that such a double increase is nowhere authorized under the RSL.

The IAS Court agreed, and issued preliminary injunctions against implementation of such procedures. I would modify that ruling, with regard to the permanent, prospective increase, on the ground that the law on this issue has already been settled in this Court and in the Court of Appeals.

In *Matter of Ansonia Residents Assn. v New York State Div. of Hous. & Community Renewal* (75 NY2d 206, 216), the Court of Appeals upheld the permanence of the MCI-based rent increase because "a rent increase on the basis of a major capital improvement does not represent payment of a finite debt which the tenant owes to the owner, but rather is payment for a service which the tenant continues to receive after the owner has recouped the initial cost of the improvement." Rather than simply compensating an owner for his investment outlay, section 26-511 (c) was designed to create an incentive for such major capital improvements by assuring the owner an adequate return on his investment, to include the continuing expense of maintaining such improvements after recoupment of initial construction costs *(ibid.; Matter of Versailles Realty Co. v New York State Div. of Hous. & Community Renewal,* 76 NY2d 325, 329). In the wake of the *Ansonia* ruling, this Court has acknowledged that the "question of whether an MCI increase becomes a permanent part of the stabilized base rent has [now] been determined in the land-

lord's favor" *(Matter of Ansonia Assocs. v State Div. of Hous. & Community Renewal,* 157 AD2d 583, 584).

To read the statute as limiting a landlord to a 6% ceiling covering a combined MCI recovery and the unrelated rent guidelines adjustment would force the landlord to absorb the lion's share of the cost of such improvements, even though those improvements inure to the permanent benefit of tenants. The rent guidelines and MCI adjustments were established for two completely distinct purposes. Neither one contradicts, nor precludes, the other. That issue would appear no longer open to debate.

As to the issue of "compounding", the statute allows a maximum of 6% in any given year, with the balance to be "spread forward in similar [annual] increments" (§ 26-511 [c] [6]). Does this mean a fixed amount, equal to no more than 6% of the pre-MCI rent for each year of the amortization, or does it allow for each year's 6% increment to be based upon the previous year's adjusted rent? Plaintiffs would read "similar increments" as meaning something less than 6% in subsequent years, so that the sum of 2 years' compounded interest would not total more than 12%, the sum of 3 years not more than 18%, etc. By compounding over a 3-year period, the cumulative increments of 6% each year would total 6% after 1 year, 12.36% after 2 years, and 19.1% after 3 years. By plaintiffs' logic, each year's MCI increment should be calculated as a simple 6% of the pre-MCI rent, until the MCI amortization is satisfied. Otherwise, compounding should limit the second year increase to no more than 5.66%, and the third year to no more than 5.357%, etc.

Bearing in mind the legislative desire to create an incentive for such investment, I do not believe plaintiffs' interpretation could have been the legislative intent of "similar increments". Questions regarding the appropriate calculation of interest accrual should be resolved in light of particular industry practice *(Matter of American Sav. Bank v Michael,* 64 NY2d 397, 405). It need simply be noted that as with RGB adjustments, once any increase becomes part of the permanent rent base, any subsequent annual increase will necessarily have a compounding effect. That axiom should not invalidate the statutorily fixed ceilings of subsequent increases.

Plaintiffs' final point challenges the right of the DHCR Commissioner to authorize by regulation, in 9 NYCRR 2522.4 (a) (8), the collection of up to 6% in the form of a temporary retroactive increase for arrears, in addition to the permanent, prospective 6% annual increase called for in RSL (Administra-

tive Code) § 26-511 (c) (6). Defendants' argument is that the tenants have already begun to enjoy the benefits of the improvements, even though there might be considerable delay before the effective date of the compensatory order. Assuming no delay, rent cannot be adjusted to reflect MCI earlier than 30 days after the landlord files his application, but as a practical matter, the processing of such an application can take up to 1 to 3 years before an order is issued. Simple fairness, defendants argue, dictates a retroactive award, albeit "temporary" (i.e., not effecting a permanent increase in the rent base), to cover that period.

The problem is that by awarding such a "temporary" increase alongside a permanent, prospective increase, the rent is necessarily increased by an arbitrary figure of up to an additional 6% for each month of delay. Where the statute places a ceiling of 6% on MCI-based increases in a given year, this regulatory scheme could effectively double the height of that ceiling for up to three years. Unlike the earlier issues discussed, no portion of the RSL can be identified that would allow such an additional increment, albeit temporary, by regulation. The statute speaks in terms of spreading the MCI rent increase forward; it is silent on the regulation's novel device of simultaneously reaching backward to recoup arrears. Absent legislative authorization to this effect, the landlord will simply have to look to the permanent nature of his prospective increase in order to make up any losses suffered by reason of the administrative delay.

Accordingly, I would modify the IAS Court order to the extent of dismissing plaintiffs' challenges to the prospective aspect of the MCI rent increase (its merging into the rent base, and its compounding of annual increases), and I would otherwise affirm the order upholding plaintiffs' challenge to the regulatory extension of a landlord's right to add to the MCI increase on a temporary basis for recoupment of arrears attributed to administrative delay.