*327
 
 OPINION OF THE COURT
 

 Kaye, J.
 

 A regulation promulgated by the Division of Housing and Community Renewal (the DHCR) which prohibits rent increases for major capital improvements (MCI’s) funded out of the cash reserve fund established by a newly converted cooperative corporation is a proper exercise of the agency’s authority, as is the application of that regulation to all administrative proceedings pending at the time of its adoption. We therefore affirm the Appellate Division order that denied the rent increases sought by petitioners.
 

 Shortly after the cooperative conversion of their Forest Hills apartment building — with a significant number of units remaining as rent-stabilized units — in summer 1985, petitioners installed new windows throughout the building. The $121,508 cost of that improvement was paid out of the cooperative corporation’s reserve fund, and petitioners promptly sought MCI rent increases from the rent-stabilized tenants. After the District Rent Administrator allowed the rent increases and during the pendency of the tenants’ petitions for administrative review, in May 1987 the Rent Stabilization Code was amended. The revised Code enacted by the DHCR provided that no MCI rent increase was to be granted "to the extent that, after a plan for the conversion of a building to cooperative or condominium ownership is declared effective, such improvement is paid for out of the cash reserve fund of the cooperative corporation or condominium association.” (9 NYCRR 2522.4 [a] [9].) The Code further specified that, unless
 
 *328
 
 undue hardship or prejudice resulted, the amended Code provisions would be applicable to all pending proceedings (9 NYCRR 2527.7). Pursuant to the new regulation, the Commissioner granted the tenants’ administrative appeal from the District Rent Administrator’s order, and disallowed the rent increases.
 

 In this article 78 proceeding, the Commissioner’s denial of petitioners’ requested rent increases — a determination subsequently affirmed by the Appellate Division — is challenged on two grounds. Petitioners urge, first, that the DHCR exceeded its authority in promulgating the reserve fund exception and second, that the retroactive application of the exception was erroneous as a matter of law. Both contentions lack merit.
 

 With respect to petitioners’ first contention, we described the standard of review for a challenge to a regulation in
 
 Ostrer v Schenck
 
 (41 NY2d 782, 786) as a high one: "The function of a reviewing court is a limited one. The challenger of a regulation must establish that the regulation 'is so lacking in reason for its promulgation that it is essentially arbitrary.’ ” Similarly, in
 
 Molina v Games Mgt. Servs.
 
 (58 NY2d 523, 529), we noted that the "Legislature may establish administrative agencies to accomplish its purposes and such agencies may be given the power to adopt rules and regulations to advance the purpose for which they were created. The regulations so adopted, if reasonable, have the force and effect of law.”
 

 Petitioners’ challenge to the regulation is essentially twofold: that it is in excess of the authority to promulgate regulations delegated to DHCR and not in furtherance of the purposes of the Code; and that, even if within the scope of DHCR’s authority, the regulation is so manifestly unreasonable as to be invalid.
 

 Effective August 2, 1985, the Legislature delegated to DHCR the authority to promulgate amendments to the Rent Stabilization Code (L 1985, ch 888, § 2, amending Administrative Code of City of New York § YY51-6.0 [b]). As the Appellate Division noted, addressing an issue similar to the one before us, "by delegating to DHCR the authority to adopt an amendment to the Code which 'protects tenants and the public interest’ (Administrative Code § 26-511 [c] [1], formerly § YY51-6.0 [c] [1]), the Legislature clearly provided the agency with a broad mandate, which would inevitably require some changes in the legal relationship between landlords and ten
 
 *329
 
 ants.”
 
 (Festa v Leshen,
 
 145 AD2d 49, 61.) The reserve fund regulation is plainly within the scope of the agency’s mandate. Indeed, as the DHCR points out, there were few such applications before the changes in the law regarding cooperatives and condominiums
 
 (see,
 
 Administrative Code ch 51 [recodified as § 26-703]). Thus, DHCR was exercising its power “to fill in the interstices in the legislative product by prescribing rules and regulations consistent with the enabling legislation.”
 
 (Matter of Nicholas v Kahn,
 
 47 NY2d 24, 31.) Contrary to petitioners’ claim, the challenged regulation bears no resemblance to the regulation we struck down in
 
 Boreali v Axelrod
 
 (71 NY2d 1); none of the four "coalescing circumstances” that led us to conclude there was an intrusion into the legislative domain is present here
 
 (see,
 
 71 NY2d, at 11-14,
 
 supra).
 

 DHCR’s regulation was also rational. The Rent Stabilization Law allows the DHCR to grant rent increases in excess of standard guideline increases in various circumstances, including increases for MCI’s, as determined by the agency. By permitting the cost of such improvements to be shifted permanently to the tenants — continuing even after actual costs have been recouped — owners are encouraged to make voluntary investments in the improvement of their buildings, which also redounds to the benefit of the tenants
 
 (see, Matter of Ansonia Residents Assn. v New York State Div. of Hous. & Community Renewal,
 
 75 NY2d 206). Accordingly, where an MCI in a cooperative is funded through a special assessment of all proprietary lessees, the cooperative corporation may be eligible to file for an MCI rent increase. By contrast, in order to secure approval for a cooperative conversion, the offeror is required to establish a minimum reserve fund, which is to be used exclusively “for making capital repairs, replacements and improvements necessary for the health and safety of the residents” (Administrative Code § 26-703). Plainly, there is no analog to the owner’s voluntary investments for which permanent rent increases may be allowed.
 
 (See also,
 
 9 NYCRR 2522.4 [a] [10] [rent increase denied for MCI funded by government grant].)
 

 Furthermore, it is not the owner of the reserve fund — the cooperative corporation — that would collect the rent increase from the rent-stabilized tenants. Rather, the increased rent would benefit only the holders of unsold shares — their landlords. It is hardly irrational for the DHCR to conclude that when MCI’s are funded out of legally mandated reserve funds, permanent rent increases would not only fall outside the
 
 *330
 
 statutory purposes but also could result in the sort of "profiteering” (Administrative Code § 26-501) the law was designed to prohibit.
 

 Nor was it illegal or irrational for the DHCR to apply the amended Code to all pending proceedings, as 9 NYCRR 2527.7 requires it to do, barring proof of hardship or prejudice. Addressing petitioners’ contention that they were somehow deprived of a vested interest, we note that the new regulation did not supplant an existing enactment that would have allowed them the rent increases; it simply filled a gap in the law
 
 (see, moreover, Matter of St. Vincent’s Hosp. & Med. Center v New York State Div. of Hous. & Community Renewal,
 
 109 AD2d 711,
 
 affd
 
 66 NY2d 959). Petitioners’ contention that, at the time they incurred the expense, rent increases were routinely allowed out of cooperative corporations’ reserve funds, is simply not supported by the record. Finally, the regulation applying amendments in the Code to all pending administrative proceedings, as an exercise of administrative discretion, is in no sense irrational.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Wachtler and Judges Simons, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
 

 Order affirmed, with costs.