■ In the Matter of IG SECOND GENERATION PARTNERS L.P. et al., Respondents, v NEW YORK STATE DIVISION OF HOUSING AND COMMUNITY RENEWAL, OFFICE OF RENT ADMINISTRATION, Appellant, and DRU ARSTARK, Intervenor-Appellant. [825 NYS2d 452]—

Judgment, Supreme Court, New York County (Edward H. Lehner, J.), entered March 15, 2005, annulling a determination of respondent Division of Housing and Community Renewal (DHCR) that forgave rent arrears owed by respondent-intervenor Arstark as a result of dismissal of her fair market rent appeal (FMRA), affirmed, without costs.

DHCR's determination to cancel rent arrears owed by Arstark, following dismissal of her FMRA wherein DHCR found the rent called for in the lease was less than fair market value, was without rational basis (*see Matter of Verbalis v New York State Div. of Hous. & Community Renewal*, 1 AD3d 101, 107 [2003]), or was arbitrary and capricious (*see Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 231 [1974]). Once DHCR found that the lease rent did not exceed the fair market rent, it had no authority to waive rent arrears.

There are no specific regulations or guidelines that give

DHCR the power to forgive rent arrears. DHCR's reliance on Rent Stabilization Code (9 NYCRR) § 2522.7 is misplaced because consideration of the equities therein specifically relates to the issuance of an "order adjusting or establishing any legal regulated rent," which DHCR did here in setting the fair market rent, a determination not challenged in this CPLR article 78 proceeding. Forgiveness of rent arrears owed as a result of its decisions is not within the power granted to DHCR by the Legislature.

Rent Stabilization Code § 2527.7 is similarly inapplicable. Under this section, the Code applies to any proceeding pending before DHCR "unless undue hardship or prejudice results therefrom" (see Matter of Cabrini Realty v New York State Div. of Hous. & Community Renewal, 6 AD3d 280 [2004]). Here, there is no evidence in the record to justify a finding of hardship and prejudice to forgive Arstark's obligation to pay rent arrears. The fact that Arstark owes petitioners more money after a DHCR ruling does not, by itself, indicate prejudice or hardship (see One Three Eight Seven Assoc. v Commissioner of Div. of Hous. & Community Renewal of Off. of Rent Admin., 269 AD2d 296 [2000]; see generally Loomis v Civetta Corinno Constr. Corp., 54 NY2d 18, 23 [1981]). By petitioner Wembly's letter dated April 14, 1995 and language in renewal leases signed by Arstark in 1996, 1997, 1999 and 2002, Arstark was on notice that the Rent Administrator's order reducing her collectible rent was an interim, nonbinding decision that could be modified by the pending petition for administrative review (PAR) or any appeals therefrom. Moreover, Arstark, who could have been escrowing the disputed rent amount, was given the opportunity to be heard when DHCR notified her in 2002 that it intended to apply the amended regulation, Rent Stabilization Code § 2522.3, and utilize rent-stabilized payments in the building as comparable data. However, in affidavits submitted by Arstark and her fiancé, neither claimed that an adverse result would cause hardship or prejudice. Arstark's failure to present such evidence or arguments before DHCR makes remand for this purpose unwarranted (Matter of Marksue Realty v New York State Div. of Hous. & Community Renewal, 200 AD2d 393, 394 [1994]).

We further note that DHCR in the past has permitted tenants to pay the differential between the lease rent and the interim rent set by the Rent Administrator in monthly installments (cf. Matter of Atkinson v Division of Hous. & Community Renewal, 280 AD2d 326 [2001]; Matter of Meyer v New York State Div. of Hous. & Community Renewal, 192 AD2d 375 [1993]; Matter of Shernon v New York State Div. of Hous. & Community Renewal,

10 Misc 3d 1051[A], 2005 NY Slip Op 51873[U], *2 [2005]). We agree with the IAS court that the matter should be remanded to DHCR for the sole purpose of determining the exact amount of arrearage and setting terms for its repayment. Concur—Tom, J.P., Friedman, Marlow and Malone, JJ.

Mazzarelli, J., dissents in a memorandum as follows: I would reverse the judgment appealed and reinstate the decision of the state Division of Housing and Community Renewal (DHCR). Approximately 16 years ago, Dru Arstark, the tenant in this proceeding, commenced a fair market rent appeal (FMRA). She claimed that $830 per month exceeded the fair market rent for her studio apartment at 166 Second Avenue. Five years later, in 1995, the then Rent Administrator (RA) reduced her rent to $556.82 per month. That rent reduction order required the landlord to refund $12,877.37 in rent overcharges to the tenant. It also provided that if the owner did not comply, the tenant could apply the overcharges to future rent until a full offset was made. The owner filed a petition for administrative review (PAR), which automatically stayed that portion of the RA's order directing a refund of the prior excess rent.

In 1997, while the PAR was still pending, the Legislature enacted the Rent Regulation Reform Act (RRRA). This statute, among other things, established a four-year statute of limitations for claims of rent overcharge, and changed the comparability requirements for FMRAs. On January 27, 2000, applying the 1997 RRRA, DHCR granted the landlord's PAR and determined that the legal rent was $798.07 as of May 1, 1990, not $556.82 as earlier determined by the RA. The tenant brought a CPLR article 78 proceeding to challenge that order, and in July 2000 the Supreme Court granted the request of DHCR to remit the matter for further consideration.

Then, in December 2000, Rent Stabilization Code (9 NYCRR) § 2522.3 was amended. This amendment again revised the comparability standards for FMRAs, making them less restrictive than those created by the 1997 RRRA. It provided that in determining an FMRA, rents for comparable housing might be considered where such rents are:

"(1) unchallenged rents in effect for housing accommodations subject to this [Rent Stabilization] Code on the date the tenant filing the appeal took occupancy; or

"(2) at the owner's option, market rents in effect for other comparable housing accommodations on the date the tenant filing the appeal took occupancy, as submitted by the owner" (§ 2522.3 [e]).

The amended statute also provided that it applied to all pending

cases "unless undue hardship or prejudice" would result (§ 2527.7).

Thereafter, in May 2004, DHCR acted on the then pending remitted matter and determined that the subject apartment's initial "fair market rent" was $1,078.30. The agency dismissed the tenant's FMRA and granted the owner's PAR in part. The DHCR stated:

"Section 2527.7 of the Rent Stabilization Code directs that unless undue hardship or prejudice results therefrom, where a provision of the Code is amended during the pendency of a proceeding, the determination shall be made in accordance with the changed provision. In the instant matter, [u]ndue hardship to the tenant would result if the tenant's initial stabilized rent were established at $575.00 effective May 1, 1990 in this PAR order which is being issued in 2004—many years after the issuance of the Rent Administrator's order on January 6, 1995 which set the initial rent at $552.82. Further, undue hardship would result if the tenant now had to pay back arrears over a ten year period. Relatedly, Sections 2522.3 and 2522.7 of the Rent Stabilization Code must be construed, and legal rents must be established, in a manner [taking] into consideration all factors bearing on the equities involved, preserv[ing] the regulated housing stock and provid[ing] for the orderly transition to market rents.

"[G]iven that the initial stabilized rent was set by the owner at a point in time when the former standards for the establishment of such rents were still the operative rules and further that the legal rent established by the Rent Administrator's order has been in effect throughout the pendency of this PAR proceeding, *the Commissioner is of the opinion that the payment of the rents established by the Rent Administrator's order shall be deemed full payment of the legal rent and effective only with the first rent payment date following 60 days after the issuance of this order. Only after such 60 day period will the owner be entitled to collect a rent in an amount that is based on the recomputed initial stabilized rent (determined in accordance with Section 2522.3, as amended) updated by all subsequent lawful increases and adjustments*" (emphasis supplied).

The landlord commenced an article 78 proceeding, asserting that DHCR's order essentially constituted a forgiveness of approximately $19,000 in rental arrears, and accordingly that it was arbitrary and capricious. The tenant intervened and submitted an answer and cross motion. She argued that the court should either sustain the agency's determination, or remand to the agency so that it could make a record of the fact that

personal financial hardship would result from retroactive application of the higher fair market rent.

The IAS court held that the DHCR had acted in an arbitrary and capricious manner when applying the rent increase prospectively only. It interpreted the amended statute to apply retroactively, and remanded to the DHCR for the sole purpose of determining the amount owed and setting a period for its repayment. I would reverse and reinstate the agency's decision. The law is settled that interpretation of a regulation by the agency that promulgated it and has the expertise to administer it is entitled to deference if that interpretation is not irrational or unreasonable (*Matter of Gaines v New York State Div. of Hous. & Community Renewal*, 90 NY2d 545, 548-549 [1997]; *Matter of Versailles Realty Co. v New York State Div. of Hous. & Community Renewal*, 76 NY2d 325 [1990]). Further, there is nothing in the governing statutes and regulations to preclude DHCR from applying the increase prospectively, especially where imposed after protracted administrative proceedings (*see generally Matter of Gilman v New York State Div. of Hous. & Community Renewal*, 99 NY2d 144, 152 [2002] [recognizing that lengthy appeals process could result in unfair accumulation of rental arrears]). Finally, even upon a conclusion that it would decide a case in a manner differently, a court is precluded from substituting its judgment for that of the agency to which the Legislature has given specific power to determine the issues before it, unless there is no rational basis for the agency's determination (*see Matter of Mid-State Mgt. Corp. v New York City Conciliation & Appeals Bd.*, 112 AD2d 72, 76 [1985], *affd* 66 NY2d 1032 [1985]).

The statutory sections invoked by the agency to reach its decision here are Rent Stabilization Code §§ 2522.7 and 2527.7. Section 2522.7 provides: "In issuing any order adjusting or establishing any legal regulated rent, or in determining when a higher or lower legal regulated rent shall be charged . . . the DHCR shall take into consideration all factors bearing upon the equities involved, subject to the general limitation that such adjustment, establishment or determination can be put into effect *with due regard for protecting tenants and the public interest against unreasonably high rent increases inconsistent with the purposes of the RSL*, for preventing imposition upon the industry of any industry-wide schedule of rents or minimum rents, and for preserving the regulated rental housing stock" (emphasis supplied). Section 2527.7 provides: "Except as otherwise provided herein, *unless undue hardship or prejudice results therefrom, this Code shall apply to any proceeding pend-*

*ing before the DHCR*, which proceeding commenced on or after April 1, 1984, or where a provision of this Code is amended, or an applicable statute is enacted or amended during the pendency of a proceeding, the determination shall be made in accordance with the changed provision" (emphasis supplied). Notably, neither of these provisions limits the remedies available to the DHCR upon a finding that the application of the amended statute would result in "undue hardship or prejudice." Here DHCR applied the amended statute to establish the tenant's fair market rent, and it determined that upon consideration of the equities, the amendment should be applied prospectively only. Thus, the DHCR was doing precisely what the statute has empowered it to do—establish the legal regulated rent and the date upon which it shall begin to become due.

To create its claim for arrears, the landlord relies upon four leases it executed with the tenant between 1996 and 2002. In each lease, the landlord stated the rent to be higher than the rent set in the 1995 RA's determination, and consistent with what it had been charging prior to that order.\* At the same time, however, each lease also included, without explanation, a provision that only $660.25 per month was due from the tenant (the sum set pursuant to the 1995 order and then in effect). To calculate the amount the landlord characterized as arrears, it has used the higher amounts it unilaterally created in the leases. However, these lease contracts between the landlord and tenant have no legal effect on the calculation of the fair market rent.

In *Rent Stabilization Assn. of N.Y. City v Higgins* (83 NY2d 156, 168 [1993], *cert denied* 512 US 1213 [1994]), the Court of Appeals observed that the Legislature's determination to give DHCR responsibility to promulgate rent regulations inevitably required some changes in the legal relationship between landlords and tenants, quoting *Versailles* (76 NY2d at 328-329). This includes setting fair market rents. Although the agency ultimately determined that the tenant was required to pay a higher rent, these lease contracts cannot be used by any party to undermine DHCR's statutory rights.

Finally, *Matter of Cabrini Realty v New York State Div. of Hous. & Community Renewal* (6 AD3d 280 [2004]) does not require a different result. In *Cabrini*, DHCR fixed a tenant's rent based upon a "default procedure" from a 1994 internal Processing Directive, rather than applying certain provisions of the Rent Stabilization Code which had been amended during

---

\* The 1996 lease is a two-year renewal for $894.15; the 1998 lease is a two-year renewal for $929.92; the 2000 lease is a two-year renewal for $967.12; and the 2002 lease is a two-year renewal for $1,025.12.

the pending proceeding and were applicable to the matter in controversy (*id.* at 281). The agency argued that its determination was authorized by the hardship or prejudice exception in Rent Stabilization Code § 2527.7. The IAS court confirmed the agency's decision, and we reversed, as "neither the DHCR nor the court actually found that the tenant would suffer prejudice or hardship from the application of the pertinent Code provisions" (*id.* at 282). Thus we remanded for a hearing on hardship.

Here, by contrast to *Cabrini*, the DHCR specifically made a finding that undue hardship would result to this tenant if the amended code were applied retroactively. The majority mischaracterizes this finding. It erroneously states that the tenant waived her opportunity to present evidence of hardship before DHCR or the court because she did not voice any objection in 2002, when the agency notified her that it intended to apply the amended regulation. There is nothing in the 2002 notice requesting or providing the opportunity for the tenant's input. It is to be noted that DHCR has consistently taken the position that it did not seek or want any evidence of hardship from individual tenants. Rather, DHCR made a policy determination not based on individual facts.

The majority also states that respondent-intervenor Arstark "could have been escrowing the disputed rent amount." This is an unreasonable duty to place on the tenant. The rents claimed due by the landlord are not even equivalent to that which was ultimately deemed a fair market rent. That rent, it should be remembered, was the result of two amendments to the controlling legislation during the 14-year pendency of this rental contest. Notably, those amendments allowed broader consideration of comparable apartments for determining FMRAs, thus producing a higher rent for Arstark's apartment. Clearly, Arstark could not have predicted—let alone escrowed—the amount claimed due, as that amount was adjusted only because of the legislative changes. The majority thus ascribes to Arstark a prescience not possible.

Arstark clearly had no opportunity to present evidence regarding hardship because, as a reading of the record shows, the DHCR did not want such evidence, and provided her no opportunity to present it. DHCR made its decision, as it was empowered to do, based upon its appreciation of the equities of the changed legislative landscape, not the facts of this or any particular case. That the tenant did not ask for this specific relief is not a basis for concluding that the DHCR exceeded the scope of its authority in rendering its determination (*see Matter*

*of Waverly Assoc. v New York State Div. of Hous. & Community Renewal*, 12 AD3d 272 [2004] [DHCR can consider the equities in adjusting or establishing rent]). Clearly it acted as it has a right to do under Court of Appeals precedent (*see Gilman*, 99 NY2d 144 [2002], *supra*).

Thus, I find no basis to disturb the determination by DHCR as it was neither irrational nor arbitrary.