10 N.Y.3d 474 (2008)
889 N.E.2d 475
859 N.Y.S.2d 598
In the Matter of IG SECOND GENERATION PARTNERS L.P. et al., Respondents,
v.
NEW YORK STATE DIVISION OF HOUSING AND COMMUNITY RENEWAL, OFFICE OF RENT ADMINISTRATION, Appellant, and DRU ARSTARK, Intervenor-Appellant.
Court of Appeals of the State of New York.
Argued March 19, 2008.
Decided May 6, 2008.
*475 Gary R. Connor, General Counsel, New York State Division of Housing and Community Renewal, New York City (Sheldon Melnitsky and Mary Elizabeth Lacerenza of counsel), for appellant.
*476 Shaw & Binder, New York City (Robert H. Gordon of counsel), for respondents, in opposition to appellant.
*477 Shaw & Binder, New York City (Robert H. Gordon of counsel), for respondents, in opposition to intervenor-appellant.
*478 Robert A. Katz, New York City, for intervenor-appellant.
Chief Judge KAYE and Judges GRAFFEO, SMITH and JONES concur with Judge PIGOTT; Judge READ dissents in a separate opinion in which Judge CIPARICK concurs.

OPINION OF THE COURT
PIGOTT, J.
The issue on this appeal is whether the Division of Housing and Community Renewal (DHCR) has the authority to cancel rent arrears owed by a rent-stabilized tenant as a result of DHCR's *479 resolution of an unusually protracted fair market rent appeal. Under the circumstances of this case, we hold that it does not.
In 1990, the tenant leased an apartment in a Manhattan building, owned by IG Second Generation Partners L.P. (the owner). She was the first rent-stabilized tenant after the preceding rent-controlled tenant vacated the apartment. The initial lease set the monthly rent at $830, commencing May 1, 1990. The tenant then filed a fair market rent appeal with the agency, seeking an adjustment of the $830 rent on the ground that it exceeded the apartment's fair market rent. Five years later, in 1995, the agency's Rent Administrator issued an order establishing the fair market rent for the subject apartment at $556.82 per month, based upon its applicable rent guidelines.[*] The order directed the owner to adjust the tenant's monthly rent to that amount prospectively and to refund the overcharged rent, totaling $12,877.37.
In response, the owner filed a petition for administrative review. That portion of the administrator's order directing a refund of overcharged rent was automatically stayed pending resolution of the petition (see Rent Stabilization Code [9 NYCRR] § 2529.12). The agency denied the owner's request for a stay of the remainder of the administrator's order, i.e., the prospective rent adjustment.
While the landlord's petition for review was pending, the owner notified the tenant that it would accept the rent set by the Rent Administrator's order without prejudice to collecting the full lease rent in the event that the order is overturned. The tenant also signed several renewal leases during the pendency of the review. All of the leases stated that the "collectible rent"i.e., the lower rent set by the Rent Administrator"may be modified pursuant to the DHCR's decision" on administrative review.
Another five years passed when, in January 2000, the agency partially granted the owner's petition and established the fair market rent at $798.07 per month, not $556.82 as determined by the Rent Administrator.
*480 The tenant then brought a CPLR article 78 proceeding to annul the agency's January 2000 determination. In July 2000, Supreme Court granted the agency's request to remit the matter for further consideration. At issue on this appeal is DHCR's determination on remand.
Four years later, in 2004, DHCR, once again, partially granted the owner's petition and this time established the fair market rent at $1,078.30 per month. In making this determination, the agency utilized a broader comparability standard enacted by a 2000 amendment to Rent Stabilization Code § 2522.3.
However, relying on several of its regulations, the agency determined that the tenant's payment of the rent set by the previous order of the Rent Administrator would "be deemed full payment of the legal rent" until the first payment due 60 days after the agency's new order. Only then would the owner be permitted to collect the initial lease rent plus applicable increases. The agency reasoned that, on the one hand, its amended regulations resulted in a more accurate assessment of the fair market rent; but on the other hand, "undue hardship" to the tenant would result if the agency allowed the owner to collect the $830 rent retroactive to May 1, 1990 because the tenant would have to repay the substantial rent arrears that accumulated during the decade between the Rent Administrator's order and the agency's ultimate resolution of the petition for administrative review. As a result, DHCR effectively cancelled approximately $19,000 of rent arrears owed by the tenant.
The owner then commenced this article 78 proceeding, challenging the agency's determination to the extent that it cancelled the tenant's rent arrears. The tenant intervened in the proceeding, arguing that the court should either sustain the determination or remand the matter to DHCR to allow her to submit evidence of hardship.
Supreme Court granted the owner's petition, holding that the agency's determination cancelling the rent arrears was arbitrary and capricious. The court remanded the matter to DHCR to calculate the exact amount owed and to establish a repayment schedule.
The Appellate Division, with one Justice dissenting, affirmed, concluding that, "[o]nce DHCR found that the lease rent did not exceed the fair market rent, it had no authority to waive rent arrears" (34 AD3d 379, 379 [2006]). That court granted DHCR and the tenant leave to appeal and certified the following *481 question: "Was the order of this Court, which affirmed the order of the Supreme Court, properly made?" We answer the certified question in the affirmative.
DHCR contends that it rationally exercised its equitable authority pursuant to Rent Stabilization Code (RSC) § 2522.7 in deciding to apply amended RSC § 2522.3 prospectively. DHCR also relies on RSC § 2527.7, which requires amended code provisions to apply to all proceedings pending before the agency "unless undue hardship or prejudice results therefrom." DHCR argues that, even without consideration of the tenant's personal financial circumstances, the record supports its finding of undue hardship based on the difference between the initial lease rent and the lower rent set by the Rent Administrator, the length of time between the administrator's order and the agency's resolution of the petition for administrative review, and the substantial rent arrears owed by the tenant. We disagree.
An agency's interpretation of its own regulations "is entitled to deference if that interpretation is not irrational or unreasonable" (Matter of Gaines v New York State Div. of Hous. & Community Renewal, 90 NY2d 545, 549 [1997]; see Samiento v World Yacht Inc., 10 NY3d 70, 79 [2008]). Put another way, the courts will not disturb an administrative agency's determination unless it lacks any rational basis (see Matter of Gilman v New York State Div. of Hous. & Community Renewal, 99 NY2d 144, 149 [2002]).
Here, no statute or regulation permits the Division of Housing and Community Renewal to forgive rent arrears owed by a tenant as a consequence of its determination in a fair market rent appeal. The procedure is clear. Where a rental unit moves from rent control to rent stabilization, the owner establishes "the initial legal regulated rent" in the lease or rental agreement at any amount (RSC § 2521.1 [a] [1]). That rent is subject to the tenant's right to seek a rent adjustment in a fair market rent appeal (see id.). In resolving such an appeal in the tenant's favor, RSC § 2522.3 (d) (1) requires the agency to "direct the affected owner to make the refund of any excess rent to the tenant." However, the agency, upon a finding that the initial lease rent does not exceed the fair market rent, lacks authority to modify the lease terms by forgiving rent arrears.
DHCR's reliance on RSC § 2522.7 is misplaced. That provision states: "In issuing any order adjusting or establishing any legal regulated rent, . . . the DHCR shall take into consideration *482 all factors bearing upon the equities involved." In dismissing the tenant's appeal, the agency refused to adjust the legal regulated rent established in the lease, finding it to be a fair rent. Thus, DHCR's equitable authority pursuant to RSC § 2522.7 was not implicated.
Nor does the record support DHCR's finding of undue hardship to the tenant. The fact that a tenant owes substantial back rent as a result of a DHCR determination alone is insufficient to support a finding of undue hardship (see generally One Three Eight Seven Assoc. v Commissioner of Div. of Hous. & Community Renewal of Off. of Rent Admin., 269 AD2d 296, 296 [1st Dept 2000]). A rent administrator's order allowing a tenant to pay a lower rent is not a final determination, but an interim order subject to review by DHCR, which has the authority to issue a final determination (see RSC § 2529.8).
Here, the record contains no information with respect to the tenant's personal financial circumstances to permit a finding that payment of the rent arrears would cause her undue hardship. Several renewal leases put the tenant on notice that the owner intended to collect the rent stated in the lease in the event that its petition for administrative review was successful. There is no evidence in the record that the tenant is unable to pay the rent arrears without hardship. The tenant's claim that she never had a meaningful opportunity to submit evidence of personal hardship at the agency level is not supported by the record. DHCR's 2002 notice on remand informed the tenant that the fair market rent would be established using amended RSC § 2522.3. Neither the tenant nor her cotenant alleged in response that payment of the rent arrears would cause undue hardship, even after the owner's submission specifically raised the issue.
Although DHCR's inordinate delay in resolving the owner's petition for review may have prejudiced the tenant as the amendment to RSC § 2522.3 benefitted the owner, neither a property owner nor a tenant has a vested interest in beneficial regulations (see I. L. F. Y. Co. v Temporary State Hous. Rent Commn., 10 NY2d 263, 270 [1961]; see also Matter of Versailles Realty Co. v New York State Div. of Hous. & Community Renewal, 76 NY2d 325, 330 [1990]). Nor did the tenant present any evidence that the delay in resolution of the petition after the rent was adjusted downward in 1995 was attributable to the owner (cf. Matter of Woodcrest Mgt. v New York State Div. of Hous. & Community Renewal, 305 AD2d 329, 329-330 [1st Dept *483 2003]) or the result of DHCR's negligent or deliberate conduct (see Matter of St. Vincent's Hosp. & Med. Ctr. of N.Y. v New York State Div. of Hous. & Community Renewal, 109 AD2d 711, 712 [1st Dept 1985], affd 66 NY2d 959 [1985]).
Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.
READ, J. (dissenting).
The tenant in this case filed a fair market rent appeal (FMRA) in 1990; the Rent Administrator (RA) ruled generally in the tenant's favor in 1995, substantially reducing her monthly rent and ordering the landlord to refund excess rent paid since the lease's commencement date. The lease rent was lowered because the landlord was unable to establish that it was "comparable" to rents for similar apartments in the area, as measured by the criteria then in effect under the Rent Stabilization Code (RSC). Accordingly, the RA calculated the fair market rent in accordance with default guidelines.
The landlord filed a petition for administrative review (PAR), which stayed so much of the RA's order as directed the landlord to refund excess rent to the tenant. While the PAR was pending, statutory (in 1997) and regulatory (in 2000) changes took effect, broadening the range of comparability data that DHCR was permitted to consider in a FMRA. In disposing of the PAR in 2004, the Commissioner of DHCR applied these changeswhich benefitted the landlordbut prospectively only. That is, the Commissioner dismissed the tenant's FMRA because, in light of the new test for figuring out comparability, the lease rent no longer exceeded the fair market rent; and deemed rent payments made as directed by the RA to be "full payment of the legal rent" until "the first rent payment date following 60 days after" the order's issuance. At that point the landlord was entitled to collect the lease rent as "updated by all subsequent lawful increases and adjustments."
DHCR portrays this decision as Solomonic, allowing the landlord to profit from advantageous statutory and regulatory changes occurring during the PAR's lengthy pendency (from 1995 to 2004) while safeguarding the tenant from the arrears that inevitably followed application of these changes. After all, if DHCR had resolved the PAR expeditiously (or at least before the statute was amended in 1997), the RA's determination in favor of the tenant would likely have been upheld, and the landlord would have collected less rent over the course of the tenancy. The question for us is whether sections 2522.7 and *484 2527.7 of the RSC (9 NYCRR), on which DHCR principally relies, vest the Commissioner with discretion to do what he did: to make the lease rent payable prospectively, not retroactively.
We have "repeatedly held that the interpretation given to a regulation by the agency which promulgated it and is responsible for its administration is entitled to deference if that interpretation is not irrational or unreasonable" (Matter of Gaines v New York State Div. of Hous. & Community Renewal, 90 NY2d 545, 548-549 [1997]). This is so even if the agency's interpretation "`might not be the most natural reading of the regulation, or . . . the regulation could be interpreted in another way'" (Matter of Blossom View Nursing Home v Novello, 4 NY3d 581, 595 [2005], quoting Matter of Elcor Health Servs. v Novello, 100 NY2d 273, 280 [2003]).
Section 2522.7 provides that
"[i]n issuing any order adjusting or establishing any legal regulated rent, . . . DHCR shall take into consideration all factors bearing upon the equities involved, subject to the general limitation that such adjustment, establishment or determination can be put into effect with due regard for protecting tenants and the public interest against unreasonably high rent increases inconsistent with the purposes of the [Rent Stabilization Law], for preventing imposition upon the industry of any industry-wide schedule of rents or minimum rents, and for preserving the regulated rental housing stock" (emphasis added).
The majority takes the position that DHCR's reliance on section 2522.7 is "misplaced" because, once having determined the lease rent to be fair, DHCR exhausted its equitable authority under this provision (majority op at 481-482). Thus, the majority reads section 2522.7 narrowly, as authorizing DHCR to "take into consideration all factors bearing upon the equities" only when figuring out the actual dollar amount for the legal regulated rent. DHCR, however, reads section 2522.7 more broadly, as allowing it to make payment of the legal regulated rent prospective only when justified by equitable circumstances. This is not, in my view, an irrational or unreasonable interpretation of what DHCR may do when "tak[ing] into consideration all factors bearing upon the equities" to "adjust[]" a legal regulated rent. Certainly, "nothing in the governing statutes and regulations . . . preclude[s] DHCR from applying the *485 increase prospectively" (Matter of IG Second Generation Partners L.P. v New York State Div. of Hous. & Community Renewal, Off. of Rent Admin., 34 AD3d 379, 383 [1st Dept 2006, Mazzarelli, J., dissenting]).
Next, section 2527.7 specifies that
"[e]xcept as otherwise provided herein, unless undue hardship or prejudice results therefrom, this [Rent Stabilization] Code shall apply to any proceeding pending before the DHCR, which proceeding commenced on or after April 1, 1984, or where a provision of this Code is amended, or an applicable statute is enacted or amended during the pendency of a proceeding, the determination shall be made in accordance with the changed provision" (emphasis added).
The majority also reads this regulation narrowly, interpreting "undue hardship or prejudice" to refer solely to a tenant's "personal financial circumstances" (majority op at 482). But DHCR takes these words to encompass additional sources of hardship and prejudice; for example, as in this case, the hardship and prejudice caused tenant by the inordinate length of time (nearly a decade) it took for DHCR to dispose of the PAR. Again, this is not the only interpretation the regulation might be given, but it is not an irrational or unreasonable one. Nothing in the Code identifies "personal financial circumstances" as the only permissible consideration for DHCR to weigh when assessing whether its application of a changed provision may cause "undue hardship or prejudice" to a tenant.
In sum, because DHCR reasonably and rationally interpreted and applied its regulations in this case, we should defer to its decision. Accordingly, I would answer the certified question in the negative.
Order affirmed, etc.
NOTES
[*] In establishing the fair market rent, DHCR must consider the applicable rent guidelines and "the rents generally prevailing in the same area for" comparable properties (Rent Stabilization Law of 1969 [Administrative Code of City of NY] § 26-513 [b] [1]; see Rent Stabilization Code [9 NYCRR] § 2522.3 [e]).