■ In the Matter of MID ISLAND THERAPY ASSOCIATES, LLC, Doing Business as ALL ABOUT KIDS, Appellant, v NEW YORK STATE EDUCATION DEPARTMENT, Respondent. [10 NYS3d 688]—

Lahtinen, J.P. Appeal from a judgment of the Supreme Court (Melkonian, J.), entered December 17, 2013 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent setting petitioner's reconciliation rates for certain school years.

Petitioner contracted with the New York City Department of Education (hereinafter NYCDOE) and the Counties of Westchester, Nassau and Suffolk[1] to provide special education itinerant teacher services to preschool children with disabilities. A percentage of the municipalities' payments to petitioner are reimbursed by respondent based on rates that respondent sets in accordance with its regulations. As we explained in an earlier case involving a rate dispute between the parties,

---

1. NYCDOE and the counties are sometimes jointly referred to herein as the municipalities.

petitioner's services are measured in 30-minute service units, petitioner is paid a prospective rate during the school year and a reconciliation rate is determined after the school year based on actual costs (*Matter of Mid Is. Therapy Assoc., LLC v New York State Dept. of Educ.*, 99 AD3d 1082, 1082 [2012]). Where the reconciliation rate differs from the prospective rate that was used, the service provider must pay back funds if it was overpaid and it receives additional reimbursement if underpaid. The most recent certified reconciliation rate is used in determining the next prospective rate. Significantly, the reconciliation rate, which is established per service unit, is calculated by dividing a service provider's total costs by total service units for a school year.[2] This rate is calculated after a provider, such as petitioner, supplies respondent with an independently audited Consolidated Fiscal Report (hereinafter CFR) and supporting independently audited financial statements.

For the school years 2008-2009 and 2009-2010, petitioner had been paid prospective rates of $49 and $50 per service unit, respectively, and its subsequent CFR and financial data reportedly resulted in reconciliation rates of $50 per service unit for each of those years, but respondent calculated the respective reconciliation rates as $49 and $47 per service unit. The key reason for the difference in rates is that respondent used total service units reported by the municipalities, which were higher than those reported by petitioner, thus resulting in the lower rate per service unit.[3] Petitioner disputed these rates and started the process of reconciling the discrepancies between service units that it had reported and those reported by the municipalities. Before it submitted its information, the disputed rates were finalized and certified by the Department of Budget. Moreover, since the Department of Budget had set a zero growth factor on reimbursement rates, respondent set the 2010-2011 prospective rate payable to petitioner at $47 per service unit. Petitioner commenced this proceeding challenging the reconciliation rates for the 2008-2009 and 2009-2010 school years, as well as the prospective rate for 2010-2011. Supreme Court dismissed the petition and petitioner now appeals.

Petitioner contends that respondent failed to follow its own

2. Thus, assuming no dispute as to total costs (i.e., the dividend or numerator), an increase in the total service units (i.e., the divisor or denominator) will cause a decrease in the per service unit reconciliation rate.

3. For 2008-2009, petitioner reported billing 77,714 units of service to the municipalities, but the municipalities reported paying for 79,320 units of service. For 2009-2010, petitioner reported billing 61,576 units, but the municipalities reported paying for 65,333 units.

regulations and otherwise acted arbitrarily primarily by relying upon unaudited information from the municipalities, disregarding petitioner's audited CFR and financial data, and refusing to consider petitioner's explanation for the discrepancies between its audited information and the municipalities' data. Our review of an administrative agency's determination is limited to "ascertain[ing] whether there is a rational basis for the action in question or whether it is arbitrary and capricious" (*Matter of Gilman v New York State Div. of Hous. & Community Renewal*, 99 NY2d 144, 149 [2002]), and we have previously recognized that respondent has "broad discretion in setting the reconciliation rate" (*Matter of Mid Is. Therapy Assoc., LLC v New York State Dept. of Educ.*, 99 AD3d at 1084). However, an agency determination arrived at in a manner inconsistent with its own regulations is not supported by a rational basis (*see e.g. Matter of IG Second Generation Partners L.P. v New York State Div. of Hous. & Community Renewal, Off. of Rent Admin.*, 10 NY3d 474, 481-482 [2008]; *Matter of Mid Is. Therapy Assoc., LLC v New York State Dept. of Educ.*, 99 AD3d at 1084-1085). Although "an agency's interpretation of its own regulation is entitled to deference" (*Matter of Terrace Ct., LLC v New York State Div. of Hous. & Community Renewal*, 18 NY3d 446, 454 [2012]), "courts are not required to embrace a regulatory construction that conflicts with the plain meaning of the promulgated language" (*Matter of Visiting Nurse Serv. of N.Y. Home Care v New York State Dept. of Health*, 5 NY3d 499, 506 [2005]).

Respondent's regulations define the reconciliation rate as "a tuition rate that has been calculated using actual program and financial data with the applicable reimbursement methodology applied" (8 NYCRR 200.9 [a] [20]). According to respondent's regulations, the tuition rate "shall be based on financial reports, as prescribed by the commissioner, supported by financial statements certified by a licensed or certified public accountant independent of the program's operation" (8 NYCRR 200.9 [e] [1]). Financial reports are defined, as relevant here, as the "[CFR] certified by a licensed or certified public accountant independent of the program's operation" (8 NYCRR 200.9 [e] [1] [i] [*a*] [*1*]). Respondent may make adjustments to the reported financial data and, while several authorized grounds for an adjustment are listed, adjustments are not limited to such grounds (*see* 8 NYCRR 200.9 [f] [1] [iv]).

The intent of the regulations, consistent with common sense and good government, is to gather and use correct data; hence, the repeated directives that service providers submit informa-

tion—CFRs and financial statements—that has been independently audited and certified by an appropriate professional (*see* 8 NYCRR 200.9 [e] [1] [i] [*a*] [*1*]; [ii] [*a*]). The regulations provide no authority for relying solely on unaudited information from municipalities. This does not lead to the conclusion that such information from a municipality has no role. It can be considered to require clarification or explanation from a service provider and, if adequately verified, even incorporated in the calculus. However, at a minimum, a service provider that has adhered to the regulations and provided a CFR and financial statement, both audited, should be afforded a reasonable opportunity to explain and/or reconcile its information with the unaudited information of a municipality. Consistent with its own regulations, respondent cannot simply reject audited information by reason of the existence of less reliable information without some articulable rational basis.

Here, petitioner provided independently audited data in compliance with the regulations. Information supplied by the municipalities, and particularly NYCDOE, varied from petitioner's data. Although NYCDOE had a history of supplying information that was not correct (*see e.g. Matter of Mid Is. Therapy Assoc., LLC v New York State Dept. of Educ.*, 99 AD3d at 1083 [Comptroller upheld petitioner's tuition rates for 2007-2008 based on 87,907 service units where NYCDOE had reported 100,669 service units])[4] and little effort was made to verify the municipalities' information, respondent nonetheless accepted the municipalities' information and disregarded petitioner's data. This was not an agency simply weighing and choosing between relatively equivalent but conflicting data, particularly in light of the regulatory primacy for independently audited information, with which petitioner complied, and the lack of regulatory authority for wholesale reliance on other information. Upon receiving notice of respondent's determination, petitioner elicited from the municipalities their underlying data and eventually submitted information that respondent acknowledges as a possible explanation for the discrepancies (most of which are errors by the municipalities). Petitioner's assertions that this process was time consuming, fraught with delays caused by the municipalities and hindered by a lack of cooperation from respondent are largely uncontested. Under all the circumstances, we conclude that respon-

---

4. The record contains examples of other years where NYCDOE's information was inaccurate. It appears that NYCDOE may not have been using accrual basis accounting as required by the regulations (*see* 8 NYCRR 200.9 [e] [1] [i] [*b*]).

dent acted arbitrarily and inconsistent with its own regulations and, accordingly, its determination regarding the 2008-2009 and 2009-2010 reconciliation rates must be annulled. Further, the 2010-2011 prospective rate must be annulled as it was based on the 2009-2010 reconciliation rate annulled herein. The remaining arguments are academic or unavailing.

Rose, Devine and Clark, JJ., concur. Ordered that the judgment is reversed, on the law, without costs, determination annulled, and matter remitted to respondent for further proceedings not inconsistent with this Court's decision.