Matter of 160 E. 84th St. Assoc. LLC v New York State Div. of Hous. & Community Renewal (2024 NY Slip Op 06377)

Matter of 160 E. 84th St. Assoc. LLC v New York State Div. of Hous. & Community Renewal

2024 NY Slip Op 06377

Decided on December 19, 2024

Court of Appeals

Troutman, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on December 19, 2024

No. 111 

[*1]In the Matter of 160 East 84th Street Associates LLC, Appellant,
v
New York State Division of Housing and Community Renewal, Respondent. (Index No. 157557/20)

Jillian N. Bittner, for appellant.
Matthew W. Grieco, for respondent.
New York Apartment Association, Inc., amicus curiae.

TROUTMAN, J.

Our primary task on this appeal is statutory interpretation. Specifically, we are asked to determine whether the Division of Housing and Community Renewal (DHCR) properly interpreted part D of the Housing Stability and Tenant Protection Act of 2019 (HSTPA)—repealing so-called "luxury deregulation" of rent stabilized residences—as applying to apartments that, prior to the repeal, were ordered to become deregulated upon expiration of the tenants' leases, which would not expire until after the effective date of the repeal. We answer that question in the affirmative and hold that, contrary to petitioner's contention, DHCR's interpretation of part D as eliminating luxury deregulation for an apartment owned by petitioner was proper and did not constitute an impermissible retroactive application. Finally, we reject petitioner's remaining arguments as being without merit.
I.
The Rent Stabilization Law (RSL) (Administrative Code of the City of New York § 26-501, et seq.) was enacted in 1969 to address "the intractable housing emergency in the City of New York" (Manocherian v Lenox Hill Hosp., 84 NY2d 385, 389 [1994]). The RSL contains a legislative finding that the housing shortage is "a serious public emergency" involving "an acute shortage of dwellings," and that government intervention is necessary "in order to prevent speculative, unwarranted and abnormal increases in rents" (RSL § 26-501).
DHCR administers the RSL by promulgating regulations for rent stabilization based on statutory criteria and by prohibiting owners of regulated units from charging more rent than those regulations allow (see RSL §§ 26-511, 26-512). Those regulations are codified in the Rent Stabilization Code (RSC) (see 9 NYCRR § 2520.1, et seq.).
The legislature has amended and reenacted the RSL numerous times by adjusting the terms under which tenants rent apartments and owners earn revenue from their properties (see Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal [Regina], 35 NY3d 332, 369 [2020]). This Court has consistently held that, given the long history of rent regulation in New York City, neither owners nor tenants "can expect the RSL to remain static" (id.). Furthermore, we have explained that, although owners can expect to "earn a reasonable return" on their properties, they have no right to expect that any particular iteration of the RSL will remain in force (id. [internal quotation marks omitted]).
From 1993 to 2019, the legislature amended the RSL several times by adjusting the income threshold for high-income deregulation (luxury deregulation) (see L 1997, ch 116, § 16; see also L 2011, ch 97, § 1, part B, § 36). Former RSL § 26-504.3 provided that, each year, landlords of rent-stabilized apartments for which the rent exceeded the statutory threshold could provide their tenants with an income certification form inquiring about whether tenants' household income exceeded the statutory threshold (former RSL § 26-504.3 [b]). It required the tenants to return the completed form and, if their certified income exceeded the statutory threshold for two consecutive years, "the owner [could] file the certification with [DHCR]" who was then required to "issue an order providing that such housing accommodation shall not be subject to the provisions" of the RSL "upon the expiration of the existing lease" (id.).
However, if tenants did not return the form, landlords could petition DHCR to verify the tenants' income. If, after DHCR's verification, the agency determined that the income exceeded the statutory threshold for two years, DHCR was then required to issue a deregulation order specifying that the unit would "not be subject to the [RSL] upon the expiration of the existing lease" (id. § 26-504.3 [c] [2]). If the tenant failed to provide the information necessary to verify their income, DHCR was similarly required to issue an order that conditioned deregulation "upon the expiration of the current lease" (id. § 26-504.3 [c] [3]; see also Matter of Classic Realty v New York State Div. of Hous. & Community Renewal, 2 NY3d 142, 145-146 [2004]). The RSC regulations in effect at the time similarly provided that any deregulation order became effective "upon the expiration of the existing lease" (former 9 NYCRR 2531.3 [eff. until Nov. 7, 2023]).
In 2019, the legislature enacted major changes to the RSL in the Housing Stability and Tenant Protection Act of 2019 (HSTPA) (see L 2019, ch 36, as amended). Part D of the HSTPA repealed the provisions of the RSL authorizing luxury deregulation (see id. § 1, part D, § 5). The repeal provision stated that it "shall take effect immediately" (id. part D, § 8).
In support of repeal, the legislature made the following "findings and declaration of emergency" (id., part D, § 1):
"Section 1. Legislative findings and declaration of emergency. The legislature hereby finds and declares that the serious public emergency which led to the enactment of the existing laws regulating residential rents and evictions continues to exist; that such laws would better serve the public interest if certain changes were made thereto, including the continued regulation of certain housing accommodations that become vacant.
"The legislature further recognizes that severe disruption of the rental housing market has occurred and threatens to be exacerbated as a result of the present state of the law in relation to the deregulation of housing accommodations upon vacancy. The situation has permitted speculative and profiteering practices and has brought about the loss of vital and irreplaceable affordable housing for working persons and families.
"The legislature therefore declares that in order to prevent uncertainty, potential hardship and dislocation of tenants living in housing accommodations subject to government regulations as to rentals and continued occupancy as well as those not subject to such regulation, the provisions of this act are necessary to protect the public health, safety and general welfare. The necessity in the public interest for the provisions hereinafter enacted is hereby declared as a matter of legislative determination" (id.).
A cleanup bill enacted a few days later amended part D to read as follows: "This act shall take effect immediately; provided however, that (i) any unit that was lawfully deregulated prior to June 14, 2019 shall remain deregulated" (L 2019, ch 39, § 1, part Q, § 10).
In September 2019, DHCR issued an "Explanatory Addenda" to owners and tenants of apartments subject to pre-HSTPA luxury deregulation orders stating that their apartments would be deregulated only if "the lease in effect on the day" DHCR issued the deregulation order "expired before June 14, 2019." If the lease was still in effect on or after June 14, 2019, the Addenda said the apartment would remain rent stabilized. DHCR cited a provision of the deregulation orders stating that "the subject housing accommodation is deregulated, effective upon the expiration of the existing lease," which it explained meant deregulation was contingent on the lease expiring before the HSTPA took effect.
Petitioner owns Manhattan apartment buildings that obtained luxury deregulation orders prior to the HSTPA but were denied deregulation because their leases with tenants expired after the statute took effect. It commenced this proceeding seeking to reinstate a deregulation order and annul DHCR's Addenda on the grounds that it was arbitrary, capricious, and an improper retroactive application of the HSTPA. Petitioner further contended that DHCR's delay in adjudicating petitions for luxury deregulation resulted in an improper delay of deregulation and that timely action would have resulted in deregulation prior to the effective date of the HSTPA.
Supreme Court dismissed this and similar proceedings, holding that DHCR's interpretation of the HSTPA reasonably concluded that an apartment subject to a deregulation order did not become lawfully deregulated unless its lease expired prior to June 14, 2019. It also held that there was no showing that DHCR deliberately or negligently delayed processing petitioner's application. The Appellate Division affirmed, rejecting both petitioner's claim that DHCR improperly gave the HSTPA retroactive effect and caused undue delay. We granted leave to appeal from so much of the Appellate Division order as affirmed dismissal of this proceeding.
II.
In determining this appeal, our first step is statutory interpretation. Specifically, we must determine whether DHCR's Addenda properly interpreted Part D of the HSTPA as prospectively repealing luxury deregulation for apartments previously ordered to be deregulated upon the expiration of their tenants' current leases, where those leases had not yet expired on the statute's effective date (i.e., June 14, 2019).
A.
It is well established that "[a] clause in a statute purporting to repeal other statutes is subject to the same rules of interpretation as other enactments" (Smith v People, 47 NY 330, 339 [1872]). As the parties recognize, we owe no deference to DHCR's interpretation of part D because "this appeal does not call upon us to interpret a statute" requiring "specialized knowledge and understanding of underlying operational practices or . . . an evaluation of factual data and inferences to be drawn therefrom . . . " (Roberts v Tishman Speyer Props., L.P., 13 NY3d 270, 285 [2009] [internal quotation marks omitted], quoting Matter of KSLM—Columbus Apts., Inc. v New York State Div. of Hous. & Community Renewal, 5 NY3d 303, 312 [2005]). The question here "is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent" (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459 [1980]). As a result, "there is little basis to rely on any special competence or expertise of the administrative agency and its interpretive regulations" (id.).
"[W]hen presented with a question of statutory interpretation, our primary consideration is to ascertain and give effect to the intention of the [l]egislature" (Kuzmich v 50 Murray St. Acquisition LLC, 34 NY3d 84, 91 [2019] [internal quotation marks omitted]). "Inasmuch as 'the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof' " (id., quoting Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577 [1998]).
i.
The language of the HSTPA, prospectively repealing luxury deregulation, supports DHCR's interpretation that an apartment could not become deregulated if the existing lease expired after June 14, 2019. Part D states that RSL § 26-504.3—the sole statutory authority for luxury deregulation—was "repealed" (L 2019, ch 36, § 1, part D) and that the repeal "shall take effect immediately" (id. § 1, part D, § 8). Because the HSTPA "became law" on "June [*2]14, 2019," as of that date there ceased to be any provision in New York law for an apartment to become luxury deregulated.
Apartments can be removed from rent stabilization only "through regular, officially authorized means" (Draper v Georgia Props., 94 NY2d 809, 811 [1999]). Since luxury deregulation became unavailable upon the HSTPA's passage, there is now no statute authorizing DHCR to exempt previously qualifying apartments from rent stabilization if they were not luxury deregulated as of June 14, 2019.
The legislature did, however, create an exception by amending the HSTPA to state that "any unit that was lawfully deregulated prior to June 14, 2019, shall remain deregulated" (L 2019, § 1, ch 39 part Q, § 10). But petitioner's apartment falls outside of that exception because the lease had not yet expired on June 14, 2019. As a result, DHCR properly interpreted the HSTPA, as amended, to provide that the apartment remains subject to rent stabilization.
ii.
Petitioner seeks to recast the plain language of the HSTPA in its favor by arguing that after DHCR issued a luxury deregulation order prior to the repeal, and that order became final, the apartment was exempt as a matter of law and the tenant no longer possessed a right to a rent stabilized renewal. We disagree.
Petitioner's contention is premised on its assertion that former RSL § 26-504.3 did not condition the finality or validity of an order of luxury deregulation on the expiration of the lease in effect at the time the order issued. As a result, petitioner concludes that the pre-repeal order—granting it luxury deregulation at some point after the repeal—was intended by the legislature to be unaffected by the repeal. Undisputedly, the apartments here met the former statutory criteria for luxury deregulation (see former RSL §§ 26-504.1, 26-504.3). Petitioner is therefore correct that DHCR was statutorily mandated to issue an order of deregulation when the tenant's income and rent crossed the required thresholds. However, contrary to petitioner's assertion, the satisfaction of those conditions alone does not mean the apartment immediately became exempt from rent regulation.
As DHCR explains, pre-HSTPA, the RSL did not require immediate deregulation upon the statutory conditions for luxury deregulation being met. Instead, those conditions were merely prerequisites to DHCR's obligation "to issue an order providing that such housing accommodation shall not be subject to the provisions of [the RSL] upon the expiration of the existing lease" (former RSL § 26-504.3 [b], [c] [2], [c] [3] [eff. until June 14, 2019]).
That is because, pre-HSTPA, an apartment became deregulated only upon the expiration of the lease in effect at the time a deregulation order was issued. In other words, the apartment was subject to the RSL (i.e., regulated) up until the end of the existing lease. Since the statute authorized DHCR to issue orders that would grant apartments luxury deregulated status only "upon the expiration of the existing lease," there would have been no statutory authority for DHCR to issue an order granting the apartment immediate deregulated status.
Additionally, the language of DHCR's deregulation order conforms with our understanding that deregulation did not occur until the lease's expiration, inasmuch as the order states "that the subject housing accommodation is deregulated, effective upon the expiration of the existing lease." The ordinary meaning of the word "effective," when used in reference to either a statute or an order, is to denote that it is "in operation at a given time" (Black's Law Dictionary [12th ed 2019], effective). As Black's Law Dictionary explains, "A statute, order, or contract is often said to be effective beginning (and perhaps ending) at a designated time" (id.). Black's Law Dictionary further explains that an "effective date" is "[t]he date on which a statute, contract, insurance policy, or other such instrument becomes enforceable or otherwise takes effect," which "sometimes differs from the date on which the instrument was enacted or signed" (id., date). In other words, consistent with the statutory scheme, DHCR's order stated prospectively that the apartment would become deregulated when the lease expired—not that the apartment was deregulated on the date of the order.
Generally, "the jurisdiction of an administrative board or agency consists of the powers granted it by statute, [and thus] a determination is void . . . where it is made either without statutory power or in excess thereof" (Abiele Contr., Inc. v New York City School Const. Auth., 91 NY2d 1, 10 [1997]). DHCR's order conforms with the powers granted to the agency by the former luxury deregulation statute, which, as shown above, required DHCR to make any deregulation order contingent on the expiration of the tenant's lease. Thus, DHCR did not retroactively vitiate the landlord's interests when it declined to find the apartment deregulated, inasmuch as the conditions for luxury deregulation had not been fully satisfied because the tenant's lease had not yet expired and the enactment of the HSTPA prevented that deregulation from coming into effect. Because this analysis requires only a prospective application of part D of the HSTPA, the statute is not impermissibly retroactive.
[*3]B.
We conclude our statutory analysis by applying the established rule of construction that "[t]he language of the statute must be read in the light of what it was intended to accomplish" (Guardian Life Ins. Co. of Am. v Chapman, 302 NY 226, 235 [1951]; see e.g. People v Santi, 3 NY3d 234, 243 [2004] ["[I]n implementing a statute, the courts must of necessity examine the purpose of the statute and determine the intention of the Legislature" [internal quotation marks omitted]). Inasmuch as the lease here had not expired before the repeal of luxury deregulation, treating the apartment as still being regulated is most in keeping with legislative intent because, as discussed above, the legislature expressly found that deregulation "has permitted speculative and profiteering practices and has brought about the loss of vital and irreplaceable affordable housing for working persons and families" (L 2019, ch 36, § 1; see supra at 4-5). As a result, the legislature determined that there was an emergent need to repeal luxury deregulation "in order to prevent uncertainty, potential hardship and dislocation of tenants living in housing accommodations subject to government regulations as to rentals and continued occupancy as well as those not subject to such regulation" (id.). Thus, DHCR's interpretation is in accord with the rational basis undergirding the HSTPA's elimination of luxury deregulation.
III.
Petitioner also raises the issue of DHCR's undue delay in processing petitioner's deregulation application. We reject that argument. Because "neither a property owner nor a tenant has a vested interest in beneficial regulations," even delay that prejudiced the tenant or the owner is generally not a reason to fail to apply the current law (Matter of IG Second Generation Partners L.P. v NYS DHCR, Off. of Rent Admin. [IG Second Generation], 10 NY3d 474, 482 [2008], citing I. L. F. Y. Co. v Temporary State Hous. Rent Commn., 10 NY2d 263 [1961]). There is also no basis to apply prior law unless the party demanding application of the prior law demonstrates that the agency caused improper delay, or that the agency "deliberately or negligently delayed processing the [applications] before it" (Matter of St. Vincent's Hosp. & Med. Ctr. of N.Y., 109 AD2d 711, 712 [1st Dept 1985] [internal quotation marks omitted], affd 66 NY2d 959 [1985]).
Petitioner does not provide evidence of negligence and, instead, asks us to infer negligence from the fact that DHCR issued a deregulation order about two years after the petition was filed. However, petitioner had asked DHCR to verify the tenant's income through an independent investigation with the Department of Taxation and Finance (DTF). Cases involving DTF verification require interagency coordination, and in some cases this process may require "a more involved assessment" (Matter of Brookford, LLC v New York State Div. of Hous. & Community Renewal, 31 NY3d 679, 686 [2018]); see Tax Law § 171-b). We have declined to infer willfulness or negligence by DHCR from nothing more than lengthy processing times (see IG Second Generation, 10 NY3d at 482), and we decline to do so here. Even an "inordinate delay" by DHCR is no basis for declining to apply the current law, absent a showing of negligence or willfulness (id. at 482-483), which petitioner has not demonstrated here. Reversing DHCR's decision based solely on delay or missed deadlines "would not only be impractical but would also fail to recognize the degree to which broader public concerns, not merely the interests of the parties, are affected by administrative proceedings" (Matter of Dickinson v Daines, 15 NY3d 571, 575 [2010] [internal quotation marks omitted]).
Moreover, petitioner cannot overcome the absence of willful or negligent delay by arguing that DHCR failed to meet certain statutory timetables for processing petitioner's deregulation application. The ordinary rule is that a statutory deadline for government action "is directory rather than mandatory," unless the statutory text contains some clear indication "that the designation of time was intended as a limitation on the power of the body or officer" (Dickinson, 15 NY3d at 574 [internal quotation marks omitted], quoting Matter of Grossman v Rankin, 43 NY2d 493, 501 [1977]), which has not been shown here. Nor was such a duty imposed by regulation, inasmuch as the RSC during this proceeding stated that "[t]he expiration of the time periods prescribed . . . for action by the DHCR" does not divest DHCR of authority to process petitions and issue determinations (9 NYCRR § 2531.9 [eff. until Nov. 7, 2023]).
IV.
Petitioner's remaining arguments lack merit. Accordingly, the order of the Appellate Division, insofar as appealed from, should be affirmed, with costs.
Order insofar as appealed from affirmed, with costs. Opinion by Judge Troutman. Chief Judge Wilson and Judges Rivera, Garcia, Singas, Cannataro and Halligan concur.
Decided December 19, 2024